UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CASTLETON COMMODITIES SHIPPING CO. PTE LTD. | CIVIL ACTION |
| V. | NO. 16-6619 |
| HSL SHIPPING & LOGISTICS NA, INC., ET AL. | SECTION "L" (3) |

ORDER & REASONS

I. BACKGROUND

Before the Court is Defendant Hudson Shipping Lines, Inc. Liberia's ("HSL Liberia") Motion for Reconsideration of this Court's Order, R. Doc. 55, granting Plaintiff Castleton Commodities Shipping Co.'s ("Castleton") Motion to Stay pending appeal. R. Doc. 56. The Court has reviewed the briefs and the applicable law, and now issues this Order & Reasons.

A. FACTS

This case arises out of two contracts which the Plaintiff claims are for bareboat charterparties (the "Charters"). On or about April 11, 2014, Castleton Commodities Shipping Co. PTE LTD. ("Castleton") and HSL Shipping & Logistics NA, Inc. ("HSL") contracted for Castleton to charter two "newbuild bulk carriers" to HSL Shipping for three-to-seven years. R. Docs 2, 3. Under the terms of the contracts, HSL was required to purchase the vessels at the end of the charter with the charter payments to be credited to the sale price. When HSL Shipping failed to pay a security for the Charters into an escrow account, Castleton commenced arbitration before the London Maritime Arbitration Association ("LMAA"). R. Doc. 4. On May 10, 2016, the LMAA issued a Partial Finding Award in Castleton's favor and ordered HSL Shipping "to co-operate with

Castleton in establishing a Joint Order Escrow Agreement, and thereupon pay into the Joint Order Escrow Account to be opened pursuant thereto the Initial Cash Amount of US $3 million per Vessel . . ." R. Doc. 5. According to Castleton, HSL refused to comply with the LMAA's order. R. Doc. 1 at 4. Castleton consequently terminated the Charters based on HSL's purported repudiatory breaches of its obligations. R. Doc. 1 at 4. Castleton estimates its damages from the breach total $8,040,155 as to the principal amount and $12,060,232 in total after adding interest, costs, and attorneys' fees. R. Doc. 1 at 4–5.

On May 19, 2016, Castleton filed an in rem Complaint against HSL Shipping in the Eastern District of Louisiana. Asserting admiralty jurisdiction and citing Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, Castleton sought the seizure of HSL property: to wit, bunker fuel aboard the M/V SILVER NAVIGATOR, which at that time was located at United Bulk Terminal, 14537 Highway 15, Davant, Louisiana, Mile 650 AHP, and therefore within the jurisdiction of the Court. R. Doc 2. Castleton also sought to garnish funds, chattels, property, and other goods belonging to HSL in the possession of the M/V SILVER NAVIGATOR. R. Doc. 3. The Court granted the motions after determining that the premises for attachment and garnishment appeared to exist on the facts as pled by Castleton. R. Docs. 6, 7.

On May 25, 2016, Castleton filed an Amended Complaint asserting alter-ego liability as to a new defendant, Hudson Shipping Lines, Inc. Liberia ("HSL Liberia"). R. Doc. 11. According to Castleton, HSL Liberia is a shell corporation through which HSL "has commenced its business of chartering vessels, purchasing bunkers and shipping cargo as a means to shield it from liabilities of creditors such as Plaintiff." R. Doc. 11 at 9.

On June 2, 2016, HSL filed a Motion to Vacate, R. Doc. 16, on the grounds that the Court lacks admiralty jurisdiction over Castleton's claims. HSL argued that "vessels under construction

give rise to neither a maritime contract nor a maritime tort." *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 301 (5th Cir. 2008). Castleton opposed the Motion, and urged three arguments in support of its position that both of the Charters are maritime contracts: (1) HSL's primary obligation under the Charters is to lease the Vessels; (2) the Court has the discretion to sever any non-maritime portions of the Charters and retain admiralty jurisdiction; and (3) the vessels were launched prior to the filing of the instant suit, which is dispositive on the issue of admiralty jurisdiction over a maritime contract. R. Doc. 30. However, the Court found that the "principle objective" of the Charters was the construction and sale of vessels and that the charter payments were in fact disguised down payments on the sales. Contracts for the construction and sale of vessels do not sound in admiralty. *See Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 25 (2004); *North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding*, 249 U.S. 119, 126–27 (1919). Therefore, the Court granted Defendant HSL's Motion to Vacate and Dismiss.

Following the Court's Order, on August 25, 2016, Defendant Hudson Shipping Lines, Inc. Liberia ("HSL Liberia") filed a Motion for Return of Property. R. Doc. 50. HSL Liberia sought the return of the Letter of Undertaking, which was issued as security in this matter. R. Doc. 50. Subsequently, Castleton filed a Motion to Stay pending appeal of this Court's Order. R. Doc. 51. Castleton argued that a stay was warranted because it would suffer irreparable harm if HSL was allowed to recover the Letter of Undertaking. In contrast, Castleton averred that the Defendant would not be harmed by a stay, as the security at issue was a Letter of Undertaking, rather than cash or a bond. Additionally, Castleton argued it has a substantial likelihood of success on appeal, and an appeal would not have an adverse impact on the public interest. Citing the United States Court of Appeals for the Fifth Circuit's decision in *Ruiz v. Estelle*, Castleton concluded it had met the four requirements necessary for issuing a stay. *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir.

1981) (holding that the factors for determining whether to grant a stay pending appeal "are (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.").

Along with the Motion to Stay, on August 31, 2016, Castleton filed a Motion to Expedite hearing on the Motion to Stay. R. Doc. 52. Defendant HSL filed an Opposition to the Motion to Expedite on September 1, 2016, arguing no expedited hearing was warranted and they would be prejudiced if an expedited hearing was granted. R. Doc. 53.

On September 6, 2016, this Court issued an Order granting Castleton's Motion to Stay. R. Doc. 55. The Court noted district courts have broad discretion to stay proceedings, and applied the four factors set out in *Ruiz v. Estelle,* to determine that a stay was appropriate in this case. Specifically, the Court noted that if a stay was not granted, the Letter of Undertaking was returned to HSL, and Castleton's appeal was successful, it would certainly suffer irreparable harm, as HSL would have no assets Castelton could recover against. Additionally, the Court found that staying the proceedings pending appeal would not cause HSL substantial harm, as the underlying security was a promise to pay, rather than an actual asset. Because these two factors weighed so heavily in favor of granting a stay, a stay would have no adverse impact on the public interest, and the Court was satisfied Castleton had demonstrated the possibility of success on appeal, the Court granted the motion. R. Doc. 55.

    **B.    PRESENT MOTION**

On September 8, 2016, HSL filed a Motion for Reconsideration, R. Doc. 56, as well as a Motion to Expedite the Motion for Reconsideration. R. Doc. 57.

### 1. HSL's Motion for Reconsideration

HSL makes three main arguments in support of its motion. First, HSL contends that Castleton made no showing of the likelihood of success on appeal. Second, they argue Castleton failed to demonstrate it would be harmed absent a stay. Finally, they contend HSL will be harmed unless it can immediately recover the Letter of Undertaking. Additionally, HSL argues that "any stay should be conditioned on (a) an actual appeal, and (b) posting a bond." R. Doc. 56-1 at 1.

HSL frames its motion as a motion to alter or amend a judgment under Rule 59(e). R. Doc. 56-1 at 2. As such, they argue the Court must consider "(1) whether the judgment is based upon a manifest error of law or fact; (2) the existence of newly discovered or previously unavailable evidence; (3) whether reconsideration is necessary to prevent injustice; or (4) an intervening change in controlling law." (citing *Harcon Barge Co., Inc v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 667 (5th Cir. 1986), *cert. denied*, 479 U.S. 930 (1986). Addressing the Court's Order, HSL argues a stay cannot be granted unless the movant has met each of the four factors set out in *Ruiz*, and here, a stay is not warranted because the Court did not find that Castleton has a likelihood of success on appeal. R. Doc. 56-1 at 3. Additionally, HSL contends that Castleton made no showing it would actually suffer irreparable harm; particularly because only monetary damages would result if a stay was not granted. R. Doc. 56-1 at 5.

Discussing the third *Ruiz* factor, HSL argues that contrary to Castleton's assertion, HSL will suffer irreparable harm if the motion to stay is granted. R. Doc. 56-1 at 8. Specifically, HSL contends that the Letter of Undertaking was only issued in exchange for a cash deposit of $570,000. R. Doc. 56-1 at 9. As such, "Hudson Liberia is deprived of $570,000 of operating capital so long as the LOU remains outstanding." R. Doc. 56-1 at 8. Additionally, HSL contends that since this Court's Order dismissing Castleton's claims, Castleton has "refused to recognize the *res judicata*

5

effect of that decision" and "harassed [HSL] business partners . . . threatening to attach any other cargo." R. Doc. 56-1 at 10. Thus, HSL argues that granting a stay in this matter gives the impression that Castleton's claim has substantial merit and may further harm HSL's business.

Furthermore, HSL contends that the Court should only grant a stay if (1) Castleton actually files an appeal,[1] and (2) files adequate security as condition of the stay. R. Doc. 56-1 at 11. In the alternative, HSL argues that the Court should only grant a limited 10-day stay, and then let the Fifth Circuit determine whether a stay is appropriate. R. Doc. 56-1 at 11.

### 2. Castleton's Opposition

Castleton timely responds. R. Doc. 59. Castleton contends that a motion to alter or amend a judgement under Rule 59(e) only applies to final orders, and should not apply in this case, as the Court's Order granting a stay was merely an interlocutory order. R. Doc. 59 at 3. In the alternative, Castleton argues that even if Rule 59(e) does apply here, reconsideration is unwarranted, as the Court did not make a manifest error of law or fact. R. Doc. 59 at 4. Specifically, Castleton rejects HSL's argument that reconsideration is warranted solely because Castleton cannot demonstrate a likelihood of success on appeal. First, Castleton contends that it did meet this standard. Second, Castleton avers that even if it had not demonstrated a likelihood of success on appeal, a stay is still warranted when "the balance of the equities (i.e. consideration of the other three factors) is . . . heavily tilted in the movant's favor." (quoting *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)).

Additionally, Castleton argues that it will suffer irreparable harm absent a stay. R. Doc. 59 at 5. Citing to similar cases in the United States Court of Appeals for the Second Circuit, Castelton argues that courts have often found irreparable injury when the "loss of provisional security is the alleged irreparable harm"—particularly in the maritime context. (citing *Scanscot Shipping Serv.*

---

[1] Since this Motion was filed, Castleton has filed an appeal with the United States Court of Appeals for the Fifth Circuit. See R. Doc. 61.

*(Deutschland GmbH v. Metals Tracomex Ltd.)*, No. 08-cv-7505 (2d. Cir. Dec. 23, 2009). Furthermore, Castleton contends that HSL has not demonstrated it will be harmed by the stay. R. Doc. 59 at 8. Finally, Castleton explains that it previously offered to post security in this matter, but HSL Liberia rejected any proposal that did not include the return of the LOU. *See* R. Doc. 59-8.

### C. LAW AND ANALYSIS

#### 1. Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration. *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). However, when a movant seeks review of a judgment, such as in the present case, courts treat a motion for reconsideration as either a Rule 59(e) motion to alter or amend judgment, or as a Rule 60(b) motion for relief from a judgment or order. *Lavespere v. Niagara Mach. & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). The motion is considered a Rule 59(e) motion if filed no later than 28 days from the entry of a judgment, and a Rule 60(b) motion if filed after this time period. *See* Fed. R. Civ. P. 59(e). Here, Defendant filed its Motion within 28 days of entry of the Court's Order & Reasons; thus, the Motion is treated as a Rule 59(e) motion to alter or amend judgment. A Rule 59(e) motion serves the narrow purpose of correcting manifest errors of law or fact, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. & Tool Works*, *Inc*., 910 F.2d 1667, 1674 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id*. (citing *Clancy v. Empl'rs Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D. La. 2000)). District courts have "considerable discretion in deciding

whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).

### 2. Motion for Stay

A district court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (internal quotations omitted). This inherent power includes "broad discretion to stay proceedings." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *Vedros v. Northrop Grummann Shipbuilding, Inc.*, No. CIV.A.11-1198, 2011 WL 2432955, at *1 (E.D. La. June 15, 2011) (Vance, J.). "[I]n deciding whether to stay proceedings, a Court 'must weigh competing interests and maintain an even balance.'" *Amlin Corp. Ins. v. GREEN ARROW M/V*, No. CIV.A. 11-1417, 2013 WL 392584, at *5 (E.D. La. Jan. 31, 2013) (Milazzo, J.) (quoting *Landis*, 299 U.S. at 254.); *see also Marine Power Holding, LLC v. Malibu Boats, LLC*, No. CIV.A. 14-2065, 2014 WL 7139643, at *1 (E.D. La. Dec. 15, 2014) (Feldman, J.) ("It is undisputed that a district court has inherent power to control the disposition of the causes on its docket . . .") (internal quotations omitted); *United States v. 6.83 Acres of Land, More or Less, Situated in Par. of St. Bernard*, No. CIV.A. 08-999, 2013 WL 1403088, at *3 (E.D. La. Apr. 5, 2013) (Berrigan, J.) ("The power to stay proceedings is incidental to the power inherent in every court . . .").

When determining whether to grant a stay pending appeal, courts within the United States Court of Appeals for the Fifth Circuit must consider four factors:

> "(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest."

*Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). The movant is not required to demonstrate a probability of success, but must "present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id*. at 565. As Defendant HSL emphasizes in its brief, the "[l]ikelihood of success remains a prerequisite . . . even if it is not an invariable requirement." *Ruiz v. Estelle*, 666 F.2d 854, 857 (5th Cir. 1982).

### 3. Discussion

The Court finds that Defendants do not meet the standard for the "extraordinary" remedy of reconsideration. To prevail on its motion, HSL would need to demonstrate a manifest error of law or fact, previously unavailable evidence, that reconsideration is necessary to prevent injustice, or an intervening change in the controlling law. *Harcon Barge Co., Inc v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 667 (5th Cir. 1986), *cert. denied,* 479 U.S. 930 (1986). First, as discussed *infra,* the Court does not find its previous Order was based on manifest errors of law or fact. Similarly, reconsideration is not necessary to prevent injustice, nor was there a change in the controlling law. While the Court appreciates that HSL will not have access to a portion of their operating capital as a result of this stay, that limited harm is insufficient to merit reconsideration. Instead, the Court finds that the detrimental impact of losing access to capital pending appeal is far outweighed by the harm Castleton would suffer if HSL's property is returned. Thus, the Court's initial analysis of the *Ruiz* factors in this case still applies. Nonetheless, for the sake of clarity and thoroughness, the Court will further discuss the application of the *Ruiz* factors to this case, in light of the additional information provided by HSL.

As HSL acknowledges in its motion, courts have the inherent power to control the disposition of causes on its docket—including the broad discretion to stay proceedings. However,

this discretion is not unlimited, as courts within the Fifth Circuit must consider four factors when determining whether to grant a stay pending appeal. *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). The Court will address each factor in turn.

First, the movant must demonstrate a likelihood of success on the merits of the appeal. In its motion, HSL argues that no such showing was made in this case. However, under *Ruiz,* a movant is not required to prove they will prevail, instead they only need demonstrate a *likelihood* of success. To find a likelihood of success the United States Court of Appeals for the Fifth Circuit evaluates whether the appeal raises a serious legal question, and whether the movant has made a substantial case to support his position. *Ruiz*, 650 F.2d 565; *see also United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 362 (5th Cir. 2013) (evaluating whether appeal raised a serious legal question and movant made a substantial case to determine if movant met the first *Ruiz* prong).

Here, Castelton seeks to appeal the Court's decision that the charter parties are not maritime contracts. While the Court acknowledges that some courts classify charter parties as maritime contracts, it determined that the "principle objective" of the Charters in this case were the construction and sale of vessels, and not charters for the mere operation of a vessel. *See Kirby,* 543 U.S. 14, 25 (2004). Although this Court stands behind its original interpretation of the contracts at issue, it recognizes that this appeal raises a significant legal question, and Castleton presents a substantial case to support its position. As such, the Court finds Castleton has met the first *Ruiz* factor.

Next, Castleton must show it will suffer irreparable injury absent a stay. HSL contends that because any possible injury could be compensated with monetary relief, Castleton will not suffer irreparable harm. However, without the LOU, Castleton has no recourse against HSL to recover

monetary relief. As the Supreme Court noted in *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, once a vessel is released from attachment, "restoration of the attachment is only theoretically possible." 339 U.S. 684, 689 (1950).[2] Here, if the Court releases the LOU, and Castleton is ultimately successful on appeal, HSL may no longer have assets from which Castleton can recover. Thus, Castleton has demonstrated they will suffer irreparable harm absent a stay.

HSL contends that it will in fact be harmed by a stay; and therefore Castleton cannot prevail on the third *Ruiz* factor. According to HSL, it was required to post a deposit of $570,000 in order to secure the LOU. As a result, HSL is deprived of this operating capital each day the LOU remains in place. While the Court recognizes this does impose a limited hardship on HSL, this injury falls short of the "substantial[] harm" requirement under *Ruiz.* Additionally, the Court notes that the damage resulting from the loss of operating capital pales in comparison to the amount of harm Castleton would suffer if it ultimately prevails on appeal, but it is too late to recover any actual assets from HSL.

Finally, under *Ruiz*, granting a stay must serve the public interest. HSL does not contend that granting a stay in this case would harm the public interest. Furthermore, the Court finds that ensuring parties are able to enforce judgments is in the public interest. Thus, the fourth *Ruiz* factor is satisfied.

Based on the foregoing analysis, the Court finds that the original Order granting a stay in this matter was not based on manifest errors of law or fact. After considering the additional

---

[2] In *Swift,* the Court addressed whether an order vacating attachment was a final order, however the Court's analysis regarding how releasing an attachment, or in this case an LOU, could prejudice the parties is applicable here. In either situation, releasing the property creates a risk that the rights of the parties cannot be adequately protected while the litigation proceeds. *Swift*, 339 U.S. 684, 689; *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (explaining that without immediate review of decisions regarding the posting of bond or other security, "it will be too late effectively to review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably.").

information HSL provided, the Court still finds this case meets the factors required under *Ruiz* for granting a stay pending an appeal. Thus, reconsideration is not warranted in this case.

In the alternative, HSL argues that Castleton should be required to post security pending appeal. Rule 62(c) of the Federal Rules of Civil Procedure provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court <u>may</u> suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c) (emphasis added). "The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal." Fed. R. Civ. P. 62(d).

Thus, Rule 62 allows that a party may obtain a stay pending appeal upon posting of a supersedeas bond, but does not necessarily require a bond when a party has been granted a discretionary stay pending appeal. In general, bond is required during an appeal to protect the status quo—for example, when a party seeks to delay paying a judgement pending appeal. However, that is not the situation here. Castleton is not seeking to delay paying a judgment, but is instead attempting to keep some of HSL's assets within reach in case Castleton prevails on appeal. While HSL may be harmed by the (likely temporary) loss of operating capital, there is no proof or evidence of the amount of such damages. As such, the Court finds that bond is not warranted in this case.

### D.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that HSL's Motion for Reconsideration, R. Doc. 56, is hereby **DENIED**.

**IT IS FURTHER ORDERED** HSL's Motion for Return of Property, R. Doc. 50, is **DISMISSED** as moot.

**IT IS FURTHER ORDERED** Castleton's Motion for Leave to File a Response, R. Doc. 63, is **DISMISSED** as moot.

New Orleans, Louisiana, this 22nd day of September, 2016.

_____
UNITED STATES DISTRICT JUDGE